IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PABLO RIVERA-ANDREU,

    Plaintiff,

        v.                        CIVIL NO.: 14-1029 (MEL)

PALL LIFE SCIENCES PR, LLC,

    Defendant.

**OPINION AND ORDER**

**I.   PROCEDURAL BACKGROUND**

On April 4, 2014 Pablo Rivera-Andreu ("plaintiff") filed an amended complaint against Pall Life Sciences PR, LLC ("defendant") alleging claims pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 601 *et seq.* (the "ADEA"), Puerto Rico's employment discrimination statute, P.R. Laws Ann. tit. 29, § 145 *et seq.* ("Law 100") for age discrimination, and Puerto Rico's general tort statue, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802" and "Article 1803"). ECF No. 12. On April 21, 2014, defendant moved for dismissal of plaintiff's disparate impact claims under the ADEA and of plaintiff's Article 1802 and Article 1803 claims. ECF No. 16. No response in opposition to defendant's motion was filed and on May 13, 2014 the court deemed the motion unopposed. ECF No. 23. For the following reasons defendant's motion to dismiss is granted.

**II.   FACTUAL BACKGROUND**

The court draws the following factual allegations from plaintiff's amended complaint (ECF No. 12):

Plaintiff resides in Naguabo, Puerto Rico and he was 58-years old at the time the amended complaint was filed. ¶¶ 4, 9. He is a high school graduate and does not speak English. Id. Defendant is a corporation that has fifty or more employees working in its plaint in Fajardo, Puerto Rico. ¶ 6. On September 21, 1987 defendant hired plaintiff as a Warehouse Person, assigned to the department of Store & Receiving. ¶ 10. Plaintiff held that position until June 13, 2005, when he was informed that his position had undergone a "department change," and as a result his title would be changed from Warehouse Person to Material Handler. Id. Defendant did not eliminate the Warehouse Person position as a result of the change. Id.

Since plaintiff began working for defendant, he received annual wage increases based on the results of his performance evaluations. ¶ 11. Yearly evaluations and wage increases were carried out in the month of November. Id. During the motion of August, 2010, however, defendant awarded wage increases to all warehouse employees with the exception of plaintiff. ¶ 12. The individuals who received wage increases are "predominantly younger" than plaintiff, have less seniority than plaintiff, and are "less experienced" than plaintiff. Id. Plaintiff did not receive a wage adjustment in November 2010, and "given that he had knowledge that all warehouse employees had receive[d] a salary increase in August" he complained to defendant's Human Resources Office. ¶ 13. In or around January, 2011, plaintiff met with defendant's Human Resources Director and with his supervisor, Mr. Héctor Olmeda ("Olmeda"). ¶ 14. In that meeting, the Human Resources Director told plaintiff that the wage increases received by some warehouse employees were the result of a "compression adjustment" to their salaries. Id. Plaintiff was informed that since their wage increases were the result of a "compression problem" in the salary structure, plaintiff was not entitled to such a wage increase. Id. Olmeda

did not inform plaintiff as to why he did not receive his annual performance review increase in November 2010. Id.

Plaintiff filed an internal complaint with defendant's "integrity line" in or around June, 2011. ¶ 15. Defendant did not contact plaintiff to inquire about the complaint or to let him know the results of any investigation or action taken regarding the complaint. Id. Plaintiff has first-hand knowledge regarding the salaries and ages of his co-workers, and has noticed that younger and older workers are "affected differently" by defendant's "compression adjustment" to its employees' wages. ¶ 16. Plaintiff is being paid "comparatively less salary" than younger employees who perform the same job duties that he does. Id. On April 10, 2012, plaintiff filed a charge of age discrimination with the Puerto Rico Anti-Discrimination United (the "ADU") and Equal Employment Opportunity Commission (the "EEOC"). ¶ 2.

### III. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 72 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." Id. An evaluation of a motion to dismiss under Rule 12(b)(6) requires the court to "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in plaintiff's favor.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not warrant recovery. Aulson, 83 F.3d at 3.

In order to survive a motion to dismiss, plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although

all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

The Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting Twombly, 550 U.S. at 555-56) (citation omitted). Although Twombly was decided in the antitrust context, the Supreme Court has held that the standard expounded in that decision applies to "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

IV.     LEGAL ANALYSIS

1. ADEA Disparate Impact Claims

Defendant's first argument that plaintiff's disparate impact claims should be dismissed is that plaintiff has not to exhausted administrative remedies with regard to said claim. ECF No. 16, at 2. Prior to filing a suit in federal court under the ADEA, a plaintiff must first exhaust administrative remedies by filing a charge against the allegedly discriminatory party before the EEOC within 300 days of the alleged discriminatory act and receiving a right-to-sue letter. Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005). This requirement exists "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (citing Powers v. Grinnell Corp.,

915 F.2d 34, 37 (1st Cir. 1990)). "In employment discrimination cases, '[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.'" Id. (citing Powers, 915 F.2d at 37). However, "the First Circuit and other courts as well have also held that in cases where the plaintiff acted *pro se* at the administrative level, the discrimination charge should be liberally construed in order to afford the complainant the benefit of any reasonable doubt." Santiago v. Abbott Pharmaceutical PR Ltd., Civ No. 07-1372 (JAG), 2008 WL 3895596, *4 (D.P.R. Aug. 19, 2008) (citing Lattimore, 99 F.3d at 464; Pickney v. Am. Dist. Tel Co., 568 F.Supp. 687, 690 (E.D.Ark. 1983); Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994); Edwards v. WINCO Mfg. Co., Inc., 5 F.Supp.2d 743, 749 (E.D.Mo. 1998); and Daulo v. Commonwealth Edison, 892 F.Supp. 1088 (N.D.Ill. 1995).

ADEA violations may be established by proving either of two theories: disparate treatment and disparate impact. Holt v. Gamewell Corp., 797 F.2d 36, 27 (1st Cir. 1986). "A disparate treatment theory requires a showing of purposeful or intentional discrimination, while a disparate impact theory requires proof that a facially neutral practice has a significant discriminatory impact on older employees." Abenante v. Fulflex, Inc., 701 F.Supp. 296, 199 (D.R.I. 1988). "The linchpin of a disparate treatment claim is proof of the employer's discriminatory motive. Not so in a claim of disparate impact: that type of claim is predicated not on proof of intentional discrimination, but, rather, on proof that the employer utilizes employment practices that are facially neutral in their treatment of different groups but . . . in fact fall more harshly on one group than another and cannot be justified by business necessity." Ramos v. Baxter Healthcare Corp. of Puerto Rico, 256 F. Supp. 2d 127, 145-46 (D.P.R. 2003) aff'd sub nom. Candelario Ramos v. Baxter Healthcare Corp. Of Puerto Rico, 360 F.3d 53 (1st

Cir. 2004) (citing Mullin v. Raytheon Co., 164 F.3d 696, 699-700 (1st Cir. 1999). With respect to the exhaustion of administrative remedies of disparate treatment and disparate impact claims "exhaustion of one type of claim does not exhaust the other." See, e.g., Diersen v. Walker, 117 Fed.Appx. 463, 466 (7th Cir.2004); Goethe v. Cal. Dept. of Motor Vehicles, No. 2:07–CV–1945, 2008 WL 489554, at *5 & n. 5 (E.D.Cal. Feb. 20, 2008) (collecting cases). Instead, courts must examine whether the charge to the administrative body alleges that the discrimination was intentional and whether a specific policy or practice was identified, such that a disparate impact investigation could reasonably be expected to grow out of the allegations. Butler v. Matsushita Commc'ns Indus. Corp. of U.S.A., 203 F.R.D. 575, 582 (N.D.Ga.2001) ("It is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination."). "In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Williams v. New York City Housing Auth., 458 F.3d 67, 70 (2d Cir. 2006). "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." Id.

In his charge of discrimination before the ADU and EEOC, plaintiff stated:

> I have been an employee of Pall Life Sciences since 1987. I am a 'Material Handler' and am 58 years old. On August 27, 2010, the warehouse employees (material handlers) received a wage ajustment [*sic*]. All of the employees, except for me, got a $1.00 an hour increase. I complained to Human Resources and they did nothing about it. Subsequently, I complained through the company's system and they did nothing about it. The rest of the material handlers have less seniority in the company than I [*sic*], and are substantially younger than I [*sic*] (they are 30 years old or younger, and I am 58). The company is discriminating on the basis of age with respect to wages, since they earn more than I do and yet have less seniority. I filed a complaint and nothing has been done about it.

ECF No. 20-1, at 1. Plaintiff does identify a specific practice—the wage adjustment—that he alleges had a discriminatory effect on the basis of age, but he does not specifically assert that the wage adjustment was a facially neutral practice. Although plaintiff alleges that defendant discriminated against him alone rather than against a group of older employees, he indicates that each of the other Material Handlers is thirty years of age or younger. Plaintiff notes that each of these employees received a $1.00 per hour increase as a result of the adjustment, while he, the oldest employee by at least twenty-eight years, did not. The administrative complaint is signed only by plaintiff and contains no indication that he was represented by counsel at the administrative level, suggesting that it was filed *pro se*. See id. Yet even construing the allegations liberally, based on the reference to the wage adjustment given only to employees under thirty-one years of age plaintiff's disparate impact claim at the administrative level is questionable and borderline, at best.

However, whether plaintiff exhausted administrative remedies with regard to his disparate impact claim is ultimately moot, as the claim must be dismissed based on defendant's second argument: that plaintiff fails to allege a valid disparate impact claim in the amended complaint. The amended complaint clearly alleges that defendant committed intentional age discrimination, stating that defendant "willfully and wantonly created the salary compression issue . . . because Pall under valuated [*sic*] its older employees work and found when recruiting new employees that their salary scale was below the market value for said services." ECF No. 12, ¶ 16. The amended complaint does use the phrase "disparate impact," as plaintiff claims that "he is the victim of the disparate impact caused by the age discriminatory defective pay scale adjustment, based on the alleged salary compression issue created willfully by the defendant's [*sic*]." Id. at ¶ 16. Viewed in isolation the latter allegation does not necessarily indicate that

7

plaintiff is exclusively pursuing a disparate treatment theory. However, when the complaint is viewed as a whole it becomes clear that his ADEA claim is based on allegations of purposeful age discrimination. This is not a case in which plaintiff has identified particular conduct that he claims was intentionally discriminatory and a *distinct*, facially-neutral policy or practice that had a unequal impact based on age; his entire age discrimination claim centers around the wage adjustment that younger employees received as a result of the "salary compression issue." Not once does plaintiff allege that the salary compression or wage adjustment was a facially neutral practice; rather he is explicit that the practice arose because defendant undervalued older employees—a discriminatory motivation consistent with a disparate treatment theory. While it is possible to bring both a disparate treatment and a disparate impact claim in the same litigation in a case in which the claims are conceptually and factually distinct, where the allegations have been conflated to this extent the plaintiff may not prevail under both theories. See Bramble v. Am. Postal Workers Union, AFL-CIO Providence Local, 135 F.3d 21, 26 (1st Cir. 1998) ("[P]roper disparate impact claims only involve facially *neutral* policies. Therefore, Bramble's disparate impact claim actually folds into his failed disparate treatment claim.") (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993)); see also Zawacki v. Realogy Corp., 628 F.Supp. 2d 274 n. 4 (D.Conn. 2009) (explaining that it is not permissible to being a disparate impact claim based on the same employment practice that supports a disparate treatment claim "because it provides a means for the Plaintiff to avoid establishing the subjective intent requirement for her disparate treatment claim[]." ) (citing Maresco v. Evan Chemetics, 964 F.2d 106, 115 (2d Cir. 1992)); and Ramos, 256 F. Supp. 2d at 149 aff'd sub nom. Candelario Ramos, 360 F.3d 53 (dismissing disparate impact claim where a review of the allegations revealed that the discrimination at issue centered around the defendant's conscious decision not to extend

certain benefits to one class, rather than the discriminatory effects of a neutral plan). Because the plaintiff's ADEA disparate impact claim is based on the same employment practice as his disparate treatment claim, his disparate impact claim is dismissed with prejudice.

### 2. Article 1802 and Article 1803 Claims

In Puerto Rico the provisions of the Civil Code are supplementary to special legislation. Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 393 (D.P.R. 1999) (citing Rosario v. Atlantic Southern Ins. Co., 95 P.R. Offic. Trans. 742, 747 (1968); Berrocales v. Tribunal Superior, 102 P.R. Dec. 224, 226 (1974); Rivera de Vincenti v. Colón, 103 P.R. Dec. 560 (1975)). Article 1802 and Article 1803, Puerto Rico's general tort statute, provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31 § 5141. "[T]he Puerto Rico Supreme Court has clarified that '[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by a specific labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under [Article 1802].'" Irizarry-Santiago v. Essilor Indus., 982 F. Supp. 2d 131, 140 (D.P.R. 2013) (citing Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 16 (1994)). Puerto Rico Law 100 of 1959 ("Law 100"), as amended by P.R. Laws Ann. tit. 29, § 146, *et seq.*, seeks to prevent discrimination in the workplace based on numerous protected classifications, including age. See P.R. Laws Ann. tit. 29, § 146. Because Law 100 specifically protects employees against age discrimination in the workplace and plaintiff has not identified any tortious conduct that is unrelated to his claim of age discrimination, plaintiff is barred from relief pursuant to Article 1802 and Article 1803 in this case. Therefore, his Article 1802 and Article 1803 claims are dismissed with prejudice.

## V. CONCLUSION

Based on the foregoing analysis, defendant's motion to dismiss (ECF No. 16) is granted. Because the allegations in the amended complaint conflate his disparate impact claim with his claim of intentional discrimination and has failed to allege that a facially neutral policy or practice resulted in a disparate impact on the basis of age, his ADEA disparate impact claim is dismissed with prejudice. His claims under Article 1802 and 1803 are also dismissed with prejudice, as Law 100 provides a more specific avenue under Puerto Rico law to pursue his age discrimination claims. Plaintiff's ADEA disparate treatment claim and Law 100 claim, however, survive the motion to dismiss.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 29th day of October, 2014.

s/Marcos E. López
U.S. Magistrate Judge